**Alfred v. BOTTONE, Jr., Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

**Docket o. 94–1516(L).**

United States Court of Appeals, Second Circuit.

Submitted: April 10, 2003.

Last brief filed: Aug. 12, 2003.

Decided: Nov. 20, 2003.

George W. Galgano, Jr., Galgano & Sullivan, White Plains, NY, for Petitioner–Appellant.

Jessica A. Roth, Assistant United States Attorney for the Southern District of New York (James B. Comey, United States Attorney, Southern District of New York), for Respondent–Appellee.

Before: FEINBERG, McLAUGHLIN, and SACK, Circuit Judges.

FEINBERG, Circuit Judge.

Alfred V. Bottone, Jr. moves this court to recall its mandate issued over six years ago, affirming by summary order Bottone's conviction and sentence for violating the narcotics laws. *United States v. Rosario*, No. 94–1516(L), 1996 WL 868385 (2d Cir. Apr. 14, 1997).[1] He argues that recall is appropriate because the later rulings in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *United States v. Thomas*, 274 F.3d 655 (2d Cir.2001) (en banc), call into question our prior decision. Bottone seeks to benefit from these decisions by obtaining another review of the issues he presented on direct appeal and presumably at least a lower sentence. For the reasons stated below, we deny the motion to recall.

## I. Background

In May 1994, following a jury trial, Bottone was convicted in the United States District Court for the Southern District of New York (Shirley Wohl Kram, J.) of participating in a narcotics conspiracy in viola-
tion of 21 U.S.C. § 846. At sentencing, the district court denied Bottone's request for a *Fatico* hearing.[2] Relying on the evidence presented at trial, the district court found by a preponderance of the evidence that the criminal conspiracy at issue distributed more than the amount of heroin necessary to justify the sentence the court imposed on Bottone of 360 months imprisonment.[3] On direct appeal to this court, Bottone argued, among other things, that the indictment was improperly amended by the introduction of evidence of other drug conspiracies during the course of trial. He also claimed that the district court's reliance on the Pre–Sentence Report, which grouped multiple defendants without identifying particular conspiracies, was improper because it assigned to Bottone drug quantities beyond the conspiracy with which he was charged. Bottone contended that in light of such circumstances, he should have been granted a *Fatico* hearing on the issue of drug quantity.

In April 1997, this court affirmed the judgment of conviction in a summary order, which was filed along with a published opinion, see *United States v. Rosario*, 111 F.3d 293 (2d Cir.1997).[4] In the summary order, we rejected Bottone's claim that the evidence at trial constructively amended the indictment or caused a prejudicial variance, holding that the district court acted properly when it presented the issue to the jury through a comprehensive multiple versus single conspiracy charge. *Rosario*, 1996 WL 868385, at *2. We also ruled that

---

1. Although Westlaw indicates December 9, 1996, as the date the summary order was filed, the order was actually filed on April 14, 1997. Oral argument was heard on December 9, 1996. {Editors Note: Westlaw now shows April 14, 1997, as the filing date.]

2. The reference is to *United States v. Fatico*, 579 F.2d 707 (2d Cir.1978), which dealt with

standards for evidentiary hearings at sentencing.

3. Bottone is currently serving this sentence.

4. The published opinion did not address any of the issues raised by Bottone's appeal, but dealt with various issues raised by several of Bottone's co-defendants.

the district court's finding at sentencing of a drug quantity that would support a 360–month sentence was supported by "compelling" evidence. *Id.* at \*4. The mandate issued in June 1997. The Supreme Court denied certiorari in October 1997 and re-hearing in January 1998.

Bottone then brought several petitions pursuant to 28 U.S.C. § 2255, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. 104–132, 110 Stat. 1218, and 28 U.S.C. § 2241, collaterally attacking his sentence. The first of these, a § 2255 petition based on grounds different from those presented here, was dismissed by the district court as untimely. Thereafter, this court denied a certificate of appealability. However, a § 2241 petition and another § 2255 petition by Bottone remain before this court.[5] In April 2003, Bottone filed the instant motion to recall our 1997 mandate. We turn to the merits of that motion.[6]

## II. Discussion

■■■ This court has an inherent power to recall its mandate, subject to review for abuse of discretion. *Calderon v. Thompson,* 523 U.S. 538, 549, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998); *Sargent v. Columbia Forest Prods., Inc.,* 75 F.3d 86, 89 (2d Cir.1996). However, in light of "the profound interests in repose" that attach to the mandate of a court of appeals, recall should be granted only in "extraordinary circumstances." *Calderon,* 523 U.S. at 550, 118 S.Ct. 1489 (internal citation omitted).

Bottone claims that this case presents such circumstances. He argues that the intervening decisions by the Supreme Court in *Apprendi* and by this court in *Thomas* call into serious question the correctness of our 1997 decision affirming his conviction and sentence, *Sargent,* 75 F.3d at 90; *Mancuso v. Herbert,* 166 F.3d 97, 100 (2d Cir.1999). This, according to Bottone, justifies recall of the mandate. Our 1997 affirmance, in addressing the claim that he should have been accorded a *Fatico* hearing, relied on what was then the law. Citing *United States v. Gigante,* 94 F.3d 53 (2d Cir.1996), and *United States v. Concepcion,* 983 F.2d 369, 388 (2d Cir. 1992), we held that "it is well-settled that facts relating to sentencing need only be established by a preponderance of the evidence." *Rosario,* 1996 WL 868385, at \*4. Since "the evidence of conspiring to distribute more than 300 kilograms of heroin, which determines the defendants' base offense levels, [was] compelling," we affirmed the district court's sentencing decision. *Id.*

Bottone argues that this circuit's decision in *Thomas,* which came down after we issued the mandate in his case and after the Supreme Court denied him certiorari, undermines the reasoning of our prior affirmance. *Thomas* held that after *Apprendi,* drug quantity, when used to impose a sentence above the statutory maximum, has to be charged in the indictment and submitted to a jury to decide under the beyond a reasonable doubt standard.

---

**5.** Bottone's § 2241 petition, which was stayed pending our decisions in *Love v. Menifee,* 333 F.3d 69 (2d Cir.2003), and *Villanueva v. United States,* 346 F.3d 55 (2d Cir.2003), is before a different panel. Bottone's § 2255 petition, as of the time of the instant decision, has not yet been assigned to a panel.

**6.** The motion now before us, in accordance with our usual practice, was originally submitted in April 2003 to the panel that had affirmed Bottone's conviction in 1997. At the time of that submission, one member of the panel had died, and, while the motion was being considered, another member of the panel passed away. The panel was then reconstituted in accordance with regular procedures.

274 F.3d at 663. This was not done in Bottone's case.

■■■ It is true that after *Thomas* the government's burden of proof for proving drug quantity in Bottone's case would be greater (beyond a reasonable doubt rather than by a preponderance of the evidence) and the fact-finder resolving that issue would be different (the jury rather than the judge). But Bottone's argument, although couched in the context of a motion to recall a mandate, essentially questions the legality of his sentence. As such, it is properly raised by a § 2255 motion. See *Jiminian v. Nash*, 245 F.3d 144, 146–47 (2d Cir.2001) ("[Section] 2255 is generally the proper vehicle for a federal prisoner's challenge to his conviction and sentence ....."); see also *Love*, 333 F.3d at 72 (same). The problem for Bottone is that he can no longer raise these issues in a § 2255 petition. First, under *Villanueva*, 346 F.3d at 58, a petition that has been dismissed as time-barred has been decided on the merits and renders any subsequent petition second or successive under AEDPA. Thus, Bottone's first § 2255 petition, which was dismissed as time-barred, would render any new § 2255 petition he filed second or successive. Second, even if Bottone were able to bring a § 2255 petition that was not successive, this court's decision in *Coleman v. United States*, 329 F.3d 77 (2d Cir.2003), would foreclose his claims. *Coleman* held that *Apprendi* does not retroactively apply to § 2255 petitions filed after the *Apprendi* ruling. *Id.* at 90.

■■■ Bottone cannot evade the successive petition restrictions of 28 U.S.C. § 2255 nor the holding in *Coleman* by framing his claims as a motion to recall the mandate. In *Calderon v. Thompson*, the Supreme Court held that in order to remain consistent with the purposes behind AEDPA, a prisoner's motion to recall a mandate on the basis of the merits of the underlying decision must be regarded as a second or successive application. 523 U.S. at 553–54, 118 S.Ct. 1489. Thus, recalling the mandate in such circumstances would be allowable only if it would be proper to authorize a second or successive collateral attack. *Gray–Bey v. United States*, 209 F.3d 986, 988 (7th Cir.2000) (per curiam); see also *United States v. Prevatte*, 300 F.3d 792, 796–97 (7th Cir.2002) (following *Gray–Bey* and holding that a motion to recall the mandate may only be granted if review and relief is available under 28 U.S.C. § 2255). Bottone's motion questions the merits of the underlying decision. It does not present newly discovered evidence, and as stated by the Supreme Court in *Coleman*, does not present a new rule of constitutional law made retroactive to cases on collateral review. See 28 U.S.C. §§ 2244(a), 2255. Bottone also makes no sufficient showing that the facts underlying his claim establish his innocence by clear and convincing evidence. See id. § 2255; *Calderon*, 523 U.S. at 558–59, 118 S.Ct. 1489. It would therefore be inappropriate to authorize a second or successive petition on the grounds set forth in the motion to recall, and recalling the mandate under such circumstances would be inconsistent with the objects of AEDPA. See *Calderon*, 523 U.S. at 554, 118 S.Ct. 1489.

Bottone contends, however, that his motion does not constitute a collateral attack because he is not raising a new challenge to his sentencing under *Apprendi* and *Thomas*. Instead, he argues, he merely wants the court to revisit under the proper standard the original arguments he made in his direct appeal. This claim is without merit. Bottone did not raise an *Apprendi* issue on direct appeal: He did not argue that drug quantity should have been charged in the indictment, that the issue should have gone to the jury, or that the

court should have used the beyond a reasonable doubt standard. He claimed merely that some of the evidence as to drug quantity should not have been charged to him and that the district court should have granted him a *Fatico* hearing. Thus, his contentions here do present a new challenge to his sentence. They therefore constitute a collateral attack foreclosed by § 2255's bar on successive petitions and by *Coleman*, and, as discussed above, will not be countenanced even when framed as a motion to recall the mandate.

■ Other considerations also favor denying Bottone's motion. In *Calderon*, the Supreme Court noted its concern with cases where a court of appeals "recalls its mandate to revisit the merits of its earlier decision denying habeas relief," since in such cases the prisoner has already had extensive review of his claims and "the State's interests in finality are all but paramount." 523 U.S. at 557, 118 S.Ct. 1489. Although the petition in *Calderon* challenged a state court conviction, and therefore implicated the state's interest in finality, we believe that the federal courts' interest in finality is no less important. See *Sargent*, 75 F.3d at 89 (explaining that "[t]he reason for parsimony in the exercise of our power to recall a mandate is the need to preserve finality in judicial proceedings" and noting that the Supreme Court "has repeatedly underscored the sanctity of final judgments in our federal judicial system"). But cf. *Conley v. United States*, 323 F.3d 7, 14 (1st Cir. 2003) (distinguishing *Calderon* on the grounds that "[t]he considerations are

somewhat different where . . . we are concerned with intra-federal proceedings,"[7] but nevertheless denying the motion to recall the mandate). Moreover, although Bottone challenges a decision handed down on direct appeal, rather than on a habeas claim, the reasoning of *Calderon* is equally applicable in the instant case. As noted above, Bottone (contrary to his representations) is not asking us to reconsider arguments he made on direct appeal, but is bringing a new challenge to his judgment of conviction and sentence based on an intervening change in the law. Under *Calderon*, recalling the mandate more than six years after its issuance "just to apply the benefit of hindsight," *Gray–Bey*, 209 F.3d at 988, would constitute an abuse of discretion.

■ Finally, Bottone argues that the incongruities between his case and that of a co-defendant, Jose Colon, support recalling the mandate. Colon had his conviction reversed on direct appeal on other grounds.[8] When he was sent back to the district court for resentencing, the district court, pursuant to our instructions, see *Rosario*, 111 F.3d at 300, reopened the sentencing proceedings on two counts not disturbed by the appeal, including the conspiracy count on which Bottone was also convicted. Following *Apprendi*, which had come down by then, the district court found that because drug quantity in the case had not been found by the jury, Colon could not be sentenced beyond the 20–year statutory maximum on the conspiracy count. In contrast, Bottone, who was sentenced before *Apprendi*, received 30 years on the conspiracy count.

**7.** The underlying conviction in *Conley* was, as in this case, federal rather than state.

**8.** Colon argued on appeal, the government conceded, and this court held that under the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133

L.Ed.2d 472 (1995), Colon's conviction for using and carrying a firearm during and in relation to narcotics trafficking, in violation of 18 U.S.C. § 924(c), had to be vacated. *Rosario*, 111 F.3d at 300.

While there appears to be some inequity in this situation, it is not the kind of "grave, unforeseen contingenc[y]" that makes recall of the mandate appropriate. *Calderon*, 523 U.S. at 550, 118 S.Ct. 1489. Moreover, although the timing of Colon's resentencing was fortunate for Colon, it must be noted that Colon benefitted because he presented a meritorious appeal, and his case was thereafter expressly remanded by our court for resentencing on the two remaining narcotics counts on which Colon was convicted. *Rosario*, 111 F.3d at 300. Bottone's appeal, in contrast, was found to be without merit. He cannot now take advantage of changes in the law to reshape his claims so as to get yet another bite at the apple.

We have considered all of Bottone's arguments, and none justifies recalling the mandate. We therefore deny Bottone's motion.